UNITED STATES DISTRICT COURT FOR THE
NORTHERN DISTRICT OF OKLAHOMA

| | |
|---|---|
| UNITED STATES OF AMERICA, | ) |
| | ) |
| Plaintiff, | ) |
| | ) |
| v. | ) Case No. 19-CR-0103-CVE |
| | ) |
| RAMAR TREVELLE PALMS, | ) |
| | ) |
| Defendant. | ) |

**OPINION AND ORDER**

Now before the Court are Defendant's Motion for Bill of Particulars and Brief in Support (Dkt. # 14) and Defendant's Motion to Revoke Detention Order and Request for Release on Conditions (Dkt. # 15). Defendant argues that the indictment does not provide sufficient notice concerning the underlying conduct for counts two and three, and he requests a bill of particulars providing him some guidance as to the factual basis for these charges. Dkt. # 14. Defendant also requests that the magistrate judge's detention order be revoked, and he argues that there are conditions of release that will reasonably assure his appearance and protect the safety of other persons. Dkt. # 15. Defendant requests a hearing on his motion for review of the detention order. Dkt. # 30. The Court has reviewed the parties' briefing and the transcripts of the hearings before the magistrate judge, and finds that a hearing on defendant's motion is unnecessary.

**I.**

On June 6, 2019, a grand jury returned an indictment (Dkt. # 2) charging defendant with sex trafficking by means of force, fraud, or coercion in violation of 18 U.S.C. § 1591 (count one), obstruction or attempted obstruction of enforcement of § 1591 (count two), and retaliation against a witness, victim, or informant (count three). The events giving rise to count two allegedly occurred

between November 20, 2018 and January 9, 2019, and count three is based on an incident that occurred on January 9, 2019. Defendant was arrested on June 24, 2019, and he made his initial appearance on the same day. Counsel was appointed to represent defendant, and defendant pled not guilty to the charges in the indictment. Dkt. # 7. Plaintiff filed a motion to detain defendant pending trial (Dkt. # 5), and a detention hearing was set for June 26, 2019.

At the detention hearing, plaintiff called Tulsa Police Department (TPD) Officer Justin Oxford to testify concerning the facts giving rise to defendant's arrest. Dkt. # 24, at 4. Oxford testified that TPD officers checked a website called "Cityxguide" for advertisements concerning the solicitation of commercial sex acts. Id. at 5. The officers particularly focused on cases in which the person posting the advertisement appeared to be a minor, because TPD was working to locate juveniles who could be victims of human trafficking. Id. On November 20, 2018, Oxford responded to an advertisement and set up a "date" with a woman later identified as M.W., and he arranged to meet her at the Peoria Inn in Tulsa, Oklahoma. Id. at 6. Oxford arrived at the Peoria Inn and noticed a black male in a vehicle watching Oxford as he approached M.W.'s room, and the black male was later identified as Ramar Palms. Id. Oxford advised M.W. that she was under arrest after she agreed to perform a commercial sex act, and he notified his arrest team to apprehend Palms as well. Id. at 7. Oxford searched the hotel room, and he found an identification card for Palms and a .380 caliber handgun. Id. Oxford confiscated M.W.'s cell phone, and numerous messages between M.W. and Palms were found on the phone. Id. The arrest team found some marijuana in Palms' vehicle, as well as contact information for past clients. Id. at 8.

M.W. told Oxford that she met Palms while she was working as a bartender and they started dating. Id. at 9. Palms later told M.W. that he was a pimp and that she was going to work for him.

2

Id. M.W. claimed that Palms wanted her to go on at least five "dates" every night and that he would physically abuse her if she failed to go on enough dates. Id. Palms and M.W. were married six days after the prostitution sting, and M.W. claims that Palms forced her to marry him to create a spousal privilege that would prevent her from testifying against him. Id. at 10. On December 7, 2018, defendant was charged in state court with procuring for prostitution and unlawful possession of a controlled drug. Dkt. # 15, at 4.

On January 9, 2019, a physical altercation occurred involving M.W. and Palms, and the facts concerning the incident are disputed by the parties. M.W. told Oxford that she went to the Market Pub in Tulsa, and she ran into Palms with some other women. Id. at 11. A verbal altercation started and Palms allegedly dragged her out of the bar and threw her on the ground. Id. Palms allegedly said that he knew that M.W. was working with the police and that he was going to kill her. Id. Palms attempted to drag M.W. into a car, but the altercation was broken up when some people came out of the bar. Id. Oxford met with M.W. after the incident, and she had sustained physical injuries consistent with the incident she described. Palms claims that M.W. went to the Market Pub and she knew that he would be there. Dkt. # 15, at 3. He states that M.W. became upset that he was with other women and a confrontation occurred in the parking lot. Id. at 4. He claims that they subsequently "parted ways" and he denies that he threatened or physically harmed M.W. Id. On January 11, 2018, the Tulsa County district attorney brought additional charges of intimidation of a witness, assault and battery, robbery, kidnapping, and threatening an act of violence against Palms based on the January 9, 2018 incident. Dkt. # 15, at 5.

Oxford set up an appointment for M.W. to visit the Family Safety Center and obtained a domestic violence report, and he had 72 hours after receiving the report to arrest Palms. Dkt. # 24, at 12. Oxford had an informant who advised Oxford that Palms was staying at the Shadow

3

Mountain Apartments in Tulsa, and he went to the apartments to set up surveillance. Id. However, the informant later called Oxford and told him that Palms had gone to Louisiana. Id. M.W. had previously traveled to Louisiana with Palms, and the information appeared to be credible. Id. at 12-13. On June 13 or 14, 2019, the district attorney's office notified Oxford that M.W. had received a threat from an unidentified female, and the person told M.W. "everything would be all right" as long as she did not testify against Palms. Id. at 13.

On cross examination at the detention hearing, Palms' attorney asked Oxford if he was able to gather any evidence that would corroborate M.W.'s account of the January 9, 2019 incident, but Oxford was not able to locate any witnesses who were present or surveillance footage from the bar. Id. at 16. Oxford later received affidavits from two witnesses who were allegedly present, and the affidavits were provided as part of Palms' defense at a preliminary hearing in state court. Id. at 17. Hannah McDonnell claims that she was present for the January 9, 2019 altercation between M.W. and Palms, and McDonnell's friend, Sasha Hawkins, was also present. Dkt. # 15-4; Dkt. # 15-5. Both women state that they were with Palms at the bar, and a woman claiming to be Palms' wife initiated a confrontation with Palms. Id. M.W. also accosted McDonnell, and Palms and M.W. walked out to the parking lot. Id. McDonnell and Hawkins went out to the parking lot, but their statements somewhat diverge at this point. McDonnell states that she heard a noise coming from the parking lot, and when she went out to the parking lot she found M.W. in a fetal position near the tire of a vehicle. Dkt. # 15-4. Palms yelled at M.W. and told Hawkins to take M.W.'s purse. Id. Palms said that M.W. had a gun in her purse, but McDonell denies that Palms physically harmed M.W. Hawkins states she followed Palms and M.W. out of the bar, but she did not initially hear any yelling. Dkt. # 15-5. Palms yelled that M.W. had a gun, and Hawkins states that she observed a gun in M.W.'s right jacket pocket. Id. Hawkins claims that Palms shoved M.W., but Palms did not

4

accuse M.W. of working with the police or otherwise threaten her. Id. Oxford testified that the affidavits did not detract from his assessment of M.W.'s credibility, because the affidavits were provided by a defense attorney for Palms and the witnesses did not voluntarily come to the police to make the statements. Dkt. # 24, at 20.

Oxford testified that he was aware that M.W. had been involved in prostitution before she met Palms and that Palms had not previously been arrested in connection with pandering or prostitution. Id. at 24-25. Oxford acknowledged that he did not have any independent evidence to corroborate M.W.'s claims that Palms physically abused her prior to January 9, 2019 or that Palms made her go on a certain number of "dates" every evening. Id. at 25-28. Oxford also did not attempt to gather evidence to support the confidential informant's claim that Palms had gone to Louisiana after the January 9, 2019 incident. Id. at 30. On re-direct examination, Oxford testified that he clearly observed that M.W. had serious physical injuries after the January 9, 2019 incident and that her firearm has not been seen since that date. Id. at 36.

Defendant's mother, Natalie Palms, testified at the detention hearing, and she stated that she was not aware of defendant leaving for Louisiana in the past three months. Id. at 42. She testified that Palms had a prior criminal matter in state court and he always attended his court hearings. Id. at 43. She was not aware of any prior actions by defendant that would suggest that he was a violent person or that he would engage in domestic violence. Id. at 43-44. On cross examination, she testified that defendant does not have a job and he does not have a history of stable employment, and she is not generally aware of his location. Id. at 45. However, defendant does answer his phone whenever she calls. Id.

Defense counsel represented that defendant was on bond as to the pending state court charges at the time of the detention hearing, but that he had been detained from February 4 to March 31,

2019 on the state charges. Id. at 48. Defendant was released on bond after the kidnapping and threats of act of violence charges were dismissed by the state court and his bond was reduced. Id. Defense counsel has provided transcripts of two preliminary hearings in state court at which M.W. testified, and he argues that there are significant inconsistencies in her testimony that call her credibility into question. Dkt. # 15-1; Dkt. # 15-2. Defense counsel advised the magistrate judge that defendant could live with Kristian Shepherd, the mother of one of his children, while this case is pending, but the magistrate judge noted that the pretrial services report showed that defendant could not recall his address for the two years prior to the date of the detention hearing. Dkt. # 24, at 51.

Plaintiff's counsel argued that this case involves violence against a potential victim of sex trafficking and defendant faces a statutory mandatory minimum sentence of 15 years as to count one. Id. at 53. He asked the magistrate judge to consider the risk of harm to the victim if defendant were released pending trial and that defendant was on a deferred sentence on state charges when he was arrested in November 2018. Id. at 55-56. There is also evidence that defendant may have fled to Louisiana in January 2019, and the fact that he allegedly committed the offenses charged in this case while on deferred sentencing suggests that conditions of release are likely to be ineffective. Id. at 56. Defense counsel argues that defendant has a history of making his court appearances on the state court charges and he has been on bond since March 31, 2019 without incident. Id. at 57-58. He claims that M.W. initiated the January 9, 2019 incident and there is no evidence that defendant has actively sought out M.W. to cause her harm. Id. at 60. Defendant's primary argument against pretrial detention is that M.W. is an unreliable witness with an incentive to shift blame from herself to defendant, and the evidence that defendant committed a federal crime is based solely on M.W.'s misleading statements to Oxford. Id. at 65. The magistrate judge took the matter under advisement

and reviewed the transcripts of the state court preliminary hearings before issuing a ruling as to pretrial detention.

On June 27, 2019, the magistrate judge held a hearing and granted plaintiff's motion to detain defendant pending trial. Dkt. # 12. The magistrate judge noted that she had considered all of the testimony offered at the detention hearing, as well as the affidavits of McDonnell and Hawkins and the transcripts of the state court preliminary hearings. Dkt. # 27, at 3. Defendant does not have a substantial criminal history, but he was serving a deferred sentence for possession of illegal drugs when he was arrested in November 2018. Id. The magistrate judge acknowledged that there were credibility issues concerning M.W., and this called into question the weight of the evidence as to the charged offenses. Id. at 4. However, she found Oxford's testimony credible concerning his observations of the harm to M.W. following the January 9, 2019 incident, and there was evidence that M.W. had been threatened by an unknown female in June 2019. Id. at 5. She also stated that defendant had failed to account for the firearm that was taken from M.W. on January 9, 2019, regardless of whose version of events is believed. Id. These facts raise a substantial concern for the safety of M.W., because defendant has committed acts of violence against a cooperating witness. Id. The magistrate judge considered whether conditions such as home detention or ankle monitoring would be effective in this case, but rejected this idea due to defendant's lack of a stable home environment. Id. at 6.

## II.

Defendant argues that plaintiff has not met its burden to show by clear and convincing evidence that he is a flight risk or that he poses a danger to the community or any person. Dkt. # 15. Defendant claims that the facts supporting pretrial detention are based solely on the testimony of an unreliable witness, M.W., and he suggests that the Court would become entangled in a "messy,

7

drama-filled domestic relationship" if the Court were to credit M.W.'s assertions that defendant harmed her. Id. at 7. Plaintiff responds that there is substantial evidence that defendant has already harmed the victim of the offense in an attempt to discourage her from testifying. Dkt. # 18. There is also evidence that the offenses charged in the indictment were committed while defendant was serving a deferred sentence in state court, and his lack of work history and a stable home environment make him a poor candidate for pretrial release. Id. at 7-9.

Under 18 U.S.C. § 3145(b), "[i]f a person is ordered detained by a magistrate judge . . . the person may file, with the court having original jurisdiction over the offense, a motion for revocation or amendment of the order." The Tenth Circuit requires this Court to conduct de novo review of a magistrate judge's detention order. United States v. Cisneros, 328 F.3d 610, 616 n.1 (10th Cir. 2003). A district court has the discretion to hold an evidentiary hearing if it determines that additional evidence is necessary or it may rule on the written pleadings and evidence if the factual record is sufficient. United States v. King, 849 F.2d 485, 490-91 (11th Cir. 1988); United States v. Williams, 753 F.2d 329, 334 (4th Cir. 1985). The Court has determined that it has a sufficient factual record and that another evidentiary hearing is unnecessary.

Under 18 U.S.C. § 3142(f), the Court must consider whether there are conditions or a combination of conditions that will assure the appearance of the defendant and protect the safety of any other person or the community. The Court must take into account the following factors when making this determination:

> (1) the nature and circumstances of the offense charged, including whether the offense is a crime of violence, a violation of section 1591, a Federal crime of terrorism, or involves a minor victim or a controlled substance, firearm, explosive, or destructive device;
>
> (2) the weight of the evidence against the person;

(3) the history and characteristic of the person, including--

(A) the person's character, physical and mental condition, family ties, employment, financial resources, length of residence in the community, community ties, past conduct, history relating to drug or alcohol abuse, criminal history, and record concerning appearance at court proceedings; and

(B) whether, at the time of the current offense, or arrest, the person was on probation, on parole, or on other release pending trial, sentencing, appeal, or completion of sentence for an offense under Federal, State, or local law; and

(4) the nature and seriousness of the danger to any person or the community that would be posed by the person's release.

18 U.S.C. § 3142(g).

As to the first factor, defendant is charged with a violation of § 1591 and the nature of the charged offense is a factor supporting pretrial detention. The Court finds that the second factor (weight of the evidence) is relatively neutral in this case due to the nature of plaintiff's evidence. Plaintiff's case is heavily dependent on the testimony of M.W., and defendant is correct that M.W. has potential credibility issues that can be exploited on cross-examination. However, the Court will not disregard Oxford's testimony at the detention concerning the information he learned from M.W., and he personally observed M.W.'s injuries that were consistent with her version of the January 9, 2019 incident. The third factor (history and characteristics of defendant) weighs strongly in favor of finding that defendant is both a flight risk and a danger to another person. Defendant does not have a stable job or address, and he represents that he would stay with the Shepherd, the mother of one of his children, if he were released pending trial. Plaintiff notes that Shepherd previously sought an emergency protective order against defendant, and this is not likely to be a stable home environment. Dkt. # 18, at 3-4. Oxford testified that defendant may have absconded to Louisiana shortly after the January 9, 2019 incident and, although defendant disputes this, the Court will not disregard this aspect of Oxford's testimony. It is also undisputed, that when defendant was arrested

on prostitution charges by Oxford, defendant was serving a deferred sentence for a state court drug charge. This evidence strongly supports a finding that defendant could be a flight risk due the lack of a stable home environment or steady employment. The Court must take into account that the charged offenses occurred while defendant was serving a deferred sentence on state charges, and this raises a concern that no conditions of pretrial release will discourage defendant from engaging in additional criminal behavior. The final factor for the Court's consideration is whether defendant will pose a danger to any other person or the community if he is released pending trial. Defendant is charged with sex trafficking by force or fraud, attempted obstruction of sex trafficking enforcement, and retaliation against a victim, and the very nature of the charges support a finding that defendant poses a risk of harm to M.W. M.W. alleges that defendant threatened her and caused her substantial physical harm, because defendant believed that M.W. was cooperating with law enforcement officials. Defendant disputes M.W.'s version of what occurred on January 9, 2019 but, even if the affidavits of McDonnell and Hawkins are credited, witnesses found M.W. on the ground while defendant was yelling at her. Defendant has also offered no explanation for what happened to the firearm that he apparently took from M.W. on January 9, 2019. This factor weighs strongly in favor of a finding that defendant poses a danger to M.W. if he is released pending trial.

Considering all of the § 3142(g) factors, the Court finds that there are no conditions or combination of conditions that will assure defendant's appearance at court hearings or protect the safety of the community or another person. Defendant is charged with engaging in sex trafficking and interfering with an investigation into sex trafficking, and the primary witness against him, M.W. alleges that defendant threatened and physically assaulted her. Defendant committed the charged offenses while he was serving a deferred sentence on a state court drug charge. Defendant has come forward with no evidence suggesting that he has steady employment or a stable home environment,

and the person he would be staying with on pretrial release previously sought a protective order against him. Defendant argues that the charges in this case stem from a "messy, drama-filled domestic relationship" and that M.W. has a strong motivation to shift blame from herself onto defendant. Dkt. # 15, at 7. Both of these statements could possibly be true but do not tend to show that defendant is a good candidate for pretrial release. Oxford's testimony provides strong evidence that defendant encouraged his girlfriend, M.W., to work as a prostitute, he allegedly forced M.W. to marry him to create a spousal privilege, and he attacked her because she was cooperating in the investigation against him. Defendant proposes that he should be released pending trial to live with a woman who is not his wife and who previously sought a protective order against him. Defendant is the central actor in any "messy" family relationships, and the Court will not disregard evidence supporting pretrial detention merely because there are complicated personal relationships involved. The Court does not find that this is a particularly close case, and the Court has no difficulty concluding that defendant should be detained pending trial.

## II.

Defendant asks the Court to require the government to file a bill of particulars clarifying whether counts two and three of the indictment are based on the same underlying conduct, because the indictment does not provide sufficient notice for defendant to determine whether he can assert a double jeopardy challenge. Dkt. # 14. Plaintiff responds that the indictment sets forth the elements of the offense and a range of dates in which the charged offense occurred and, combined with pretrial discovery, defendant has been given adequate notice of the factual basis for count two. Dkt. # 19.

Under Fed. R. Crim. P. 7(c), an indictment "must be a plain, concise, and definite written statement of the essential facts constituting the offense charged . . . ." If a defendant seeks more

11

definite information about the charges against him, his remedy is to file a motion for a bill of particulars. United States v. Doe, 572 F.3d 1162, 1176 (10th Cir. 2009). "The purpose of a bill of particulars is to inform the defendant of the charge against him with sufficient precision to allow him to prepare his defense." United States v. Ivy, 83 F.3d 1266, 1281 (10th Cir. 1996). A bill of particulars may be required when the indictment fails to give defendant notice of the government's theory of the case, but a defendant is not entitled to a bill of particulars to seek information about what evidence the government intends to introduce at trial. United States v. Levine, 983 F.2d 165, 167 (10th Cir. 1992). "If the indictment sets forth the elements of the offense charged and sufficiently apprised the defendant of the charges to enable him to prepare for trial, a bill of particulars is not necessary." Doe, 572 F.3d at 1176.

The Court has reviewed the indictment and finds that defendant's motion for a bill of particulars should be denied. Count two of the indictment states the elements of an offense of obstruction or attempted obstruction of enforcement of § 1591, and the indictment provided a range of dates in which the offense occurred. The Court agrees that there could be factual overlap between counts two and three, and it could be difficult to tell merely from looking at the indictment if the charges are based on the same conduct. However, defendant has been provided pretrial discovery, and it is clear from the Court's review of the detention hearing transcripts that defendant understands the factual basis for count two. United States v. Jenkins, 313 F.3d 549, 558 (10th Cir. 2002) (the focus of a bill of particulars is whether defendant will be unfairly surprised at trial, and the district court can consider whether pretrial discovery provides additional notice of the charges against the defendant); United States v. Ivy, 83 F.3d 1266, 1281 (10th Cir. 1996) (same); United States v. Hill, 2012 WL 12540234 (N.D. Okla. Nov. 2012) ("Where the government has provided full discovery, a bill of particulars will rarely be necessary"). At a minimum, defendant is on notice that M.W. will

12

testify that defendant had a history of physically abusing her and that he allegedly forced M.W. to marry him for the purpose of creating a spousal privilege. These acts alone could support a charge of interfering the enforcement of sex trafficking laws. Oxford also testified at the detention hearing that M.W. claims that she was "held hostage" after defendant was arrested on prostitution charges in November 2018 and that she could not get away from him until January 2019. Dkt. # 24, at 10. All of this conduct is distinct from the January 9, 2019 incident that forms the basis for count three, and defendant has not shown that he lacks notice of the factual basis for count two.

**IT IS THEREFORE ORDERED** that Defendant's Motion for Bill of Particulars and Brief in Support (Dkt. # 14), Defendant's Motion to Revoke Detention Order and Request for Release on Conditions (Dkt. # 15), and Defendant's Motion for Hearing to Review Detention Order (Dkt. # 30) are **denied**.

**DATED** this 16th day of August, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE