# UNITED STATES DISTRICT COURT FOR THE
# NORTHERN DISTRICT OF OKLAHOMA

| UNITED STATES OF AMERICA, | ) |
| --- | --- |
| Plaintiff, | ) |
| v. | ) Case No. 19-CR-0103-CVE |
| RAMAR TREVELLE PALMS, | ) |
| Defendant. | ) |

## OPINION AND ORDER

Now before the Court are the magistrate judge' report and recommendation (Dkt. # 59) recommending that defendant's motion to dismiss for spoliation of evidence (Dkt. # 42) should be denied and plaintiff's Notice of Intent to Admit Evidence of Other Crimes, Wrongs or Acts (Dkt. # 68). Defendant filed a motion (Dkt. # 42) to dismiss the case due to spoliation of evidence, because the arresting officer seized a cell phone from a key witness, M.W., and returned the phone to her without obtaining a forensic examination of its contents. Defendant contends that M.W.'s phone contained exculpatory evidence and plaintiff acted in bad faith by allowing M.W. to delete exculpatory evidence from her phone. The motion was referred to a magistrate judge for a hearing, and the magistrate judge recommends that the motion be denied. Dkt. # 59. Plaintiff has given notice that it intends to offer evidence that defendant threatened or harmed other prostitutes in the presence of M.W. to intimidate her, and plaintiff also seek to offer evidence of defendant's use of the internet in furtherance of prostitution. Dkt. # 68.

## I.

On June 6, 2019, a grand jury returned an indictment (Dkt. # 2) charging defendant with sex trafficking by means of force, fraud, or coercion in violation of 18 U.S.C. § 1591 (count one), obstruction or attempted obstruction of enforcement of § 1591 (count two), and retaliation against a witness, victim, or informant in violation of 18 U.S.C. § 1513 (count three). The charges stem from defendant's arrest on November 20, 2018 by an undercover Tulsa Police Department (TPD) officer who was investigating potential human trafficking of young women in the commercial sex industry. TPD Officer Justin Oxford set up a "date" with a prostitute who he believed could be a minor and a victim of human trafficking, and he agreed to meet the prostitute at the Peoria Inn in Tulsa, Oklahoma. Dkt. # 26-2, 2. When Oxford arrived at the Peoria Inn, he observed a black male sitting in a car in the parking lot, and he believed that the black male was conducting surveillance of Oxford as he approached the hotel room where he had agreed to meet the prostitute. Id. Oxford made contact with the prostitute, M.W., and arrested her after she agreed to perform a commercial sex act. Id. Oxford directed supporting officers to arrest the black male in the hotel parking lot, and the black male was subsequently identified as Ramar Palms. Dkt. # 33, at 2.

Oxford seized cell phones from M.W. and Palms, and Palms's phone was subject to a forensic examination by TPD.[1] However, Oxford returned M.W.'s phone to her and she deleted communications between herself and defendant. Defendant has filed a motion asking the Court to dismiss the case due to plaintiff's failure to preserve "apparently exculpatory evidence" or, in the alternative, he requests an adverse jury instruction concerning plaintiff's failure to preserve evidence.

---

[1] Defendant filed a motion to suppress concerning the seizure of his cell phone and the motion was denied. Dkt. # 64.

The matter was referred to a magistrate judge and a hearing was held on defendant's motion. Defendant called M.W. and Oxford as witnesses in support his motion to dismiss.

M.W. testified that Oxford seized her cell phone from the hotel room when she was arrested on November, 20, 2018, and Oxford asked if he could keep the phone to download its contents. Dkt. # 70, at 11-12. M.W. consented to a search of her phone and Oxford returned the phone to her a couple of days later. Id. at 12. M.W. gave conflicting answers to questions about whether or when she deleted data from her phone, but it is undisputed that she deleted text messages from defendant and evidence related to prostitution from her phone. Id. at 13-16. She claims that she regularly deleted old messages and did not see any reason to store communications from defendant. Id. at 16. On cross-examination, M.W. testified that Oxford did not direct her to delete evidence from her cell phone and she claims that she did not remove evidence specifically to prevent police from finding anything on her cell phone. Id. at 17. After November 20, 2018, defendant had access to her cell phone, but her testimony does not suggest that defendant removed evidence from the phone. Id. at 18.

Oxford testified that he seized M.W.'s phone when he arrested her on November 20, 2018, and it is a common practice for Oxford to seize a suspect's cell phone at the time of arrest. Id. at 22-23. Cell phones contain digital evidence of sex trafficking offenses, such as advertisements, payments by customers, and contact information for customers. Id. at 24. Oxford knew that he needed a search warrant or M.W.'s consent to search her phone, and he asked her to sign a consent form at the police station. Id. at 26. M.W. consented to a search of her phone, and Oxford intended to have the contents of the phone downloaded the next day. Id. at 27-28. However, TPD was understaffed and did not have an officer available who could download cell phones, and Oxford

conducted a limited search of text messages on the phone before returning it to M.W. Id. at 28-29. He took photographs of text messages between M.W. and defendant, and the messages related to prostitution and the encounter on November 20, 2018. Id. at 29. Oxford acknowledged that the phone could have contained evidence related to a prostitution offense committed by M.W., but he did not believe that she would be prosecuted based on evidence suggesting that she was a victim of human trafficking. Id. at 31. There could have been evidence that M.W. posted advertisements for prostitution using her phone, but Oxford believed that defendant's e-mail address was used in connection with the advertisements. Id. at 35. Oxford gave the phone back to M.W. because he did not want to alienate a cooperating witness, and he believes that she asked for her phone back. Id. at 39. Oxford testified that he did not direct M.W. to remove evidence from her phone. Id. at 42. The contents of M.W.'s phone were eventually downloaded and there was still a substantial amount of information on the phone, including evidence that defendant continued to harass M.W. after the November 20, 2018 arrest. Id.

The magistrate judge entered a report and recommendation (Dkt. # 59) recommending that the Court deny defendant's motion to dismiss or for an adverse jury instruction based on spoliation of evidence. Defendant failed to show that M.W.'s cell phone actually contained any exculpatory evidence, and the magistrate judge determined that defendant must show that plaintiff acted in bad faith by failing to preserve evidence on the phone in order to establish a constitutional violation. Dkt. # 59, at 2-3. The magistrate judge did not "condone the government's failure to maintain the phone," but he also did not find that Oxford acted in bad faith by returning M.W.'s phone to her. Id. at 3-4. The magistrate judge recommends that the Court deny defendant's motion to dismiss for spoliation of evidence and his request for an adverse jury instruction.

**II.**

Defendant objects to the magistrate judge's report and recommendation and he argues that the magistrate judge unreasonably discounted the value of the exculpatory evidence that was likely to have been on M.W.'s cell phone. Dkt. # 69, at 3. He argues that he cannot obtain comparable evidence from other sources, and he claims that Oxford acted in bad faith by returning M.W.'s cell phone to her. Id. at 5-6. Plaintiff responds that defendant has failed to show that any exculpatory evidence actually existed and, even if some potentially exculpatory evidence was lost, Oxford did not act in bad faith. Dkt. # 72.

Without consent of the parties, the Court may refer any pretrial matter dispositive of a claim to a magistrate judge for a report and recommendation. However, the parties may object to the magistrate judge's recommendation by filing a timely objection. Schrader v. Fred A. Ray, M.D., P.C., 296 F.3d 968, 975 (10th Cir. 2002); Vega v. Suthers, 195 F.3d 573, 579 (10th Cir. 1999). The Court "shall make a de novo determination of those portions of the report or specified proposed findings or recommendations to which objection is made." 28 U.S.C. § 636(b)(1). The Court may accept, reject, or modify the report and recommendation of the magistrate judge in whole or in part. Fed. R. Civ. P. 72(b).

Under California v. Trombetta, 467 U.S. 479 (1984), due process requires that police have a duty to preserve evidence in their possession "that might be expected to play a significant role in the suspect's defense." Id. at 488. For the evidence to be material as a constitutional matter, the evidence must "possess an exculpatory value that was apparent before the evidence was destroyed" and "be of such a nature that the defendant would be unable to obtain comparable evidence by other reasonably available means." Id. at 489. The holding of Trombetta has been extended to cases in

which the "exculpatory value of the evidence is indeterminate and all that can be confirmed is that the evidence was 'potentially useful' for the defense,'" and in such cases a defendant must show that the government acted in bad faith by failing to preserve evidence. United States v. Bohl, 25 F.3d 904, 910 (10th Cir. 1994) (citing Arizona v. Youngblood, 488 U.S. 51, 58 (1988)). The Tenth Circuit has identified five factors to consider to determine if the government acted in bad faith:

> (1) whether the government had explicit notice that [the defendant[ believed the [evidence] was exculpatory; (2) whether the claim that the evidence is potentially exculpatory is conclusory, or instead "back up with objective, independent evidence giving the government reason to believe that further tests of the [destroyed evidence] might lead to exculpatory evidence"; (3) whether the government could control the disposition of the evidence once [the defendant] indicated that it might be exculpatory; (4) whether the evidence was central to the case; and (5) whether the government offers any innocent explanation for disposal of the evidence.

United States v. Smith, 534 F.3d 1211,1224 (10th Cir. 2008).

The Court will initially consider whether it should have been apparent to Oxford that M.W.'s phone contained exculpatory evidence. Defendant's argument on this issue shows that it would not have been apparent to Oxford, because defendant's argument involves multiple steps and a significant amount of speculation. He argues that it should be presumed that the ordinary person keeps so much information on their cell phone that it should have apparent that relevant evidence concerning M.W.'s role in any prostitution activities would have been found. Dkt. # 42, at 4. He argues that evidence showing that M.W. posted advertisements for prostitution using her phone is inherently exculpatory for defendant, because this would show that M.W. was voluntarily engaging in prostitution and not as a result of coercion by defendant. Dkt. # 69, at 2. There may also have been text messages from customers or payment information showing that M.W. was operating independently as a prostitute. Id. Based on such evidence, defendant argues that a jury could infer

that he did not coerce M.W. into engaging in prostitution and that he did not control all aspects of his business. Id. at 3.

Defendant's argument is largely based on speculation as to what evidence might have been found on M.W.'s phone and, even if such evidence existed, the exculpatory value of the evidence is not so apparent that a reasonable police officer would have known that he had a constitutional duty to preserve the evidence. At best, the hypothetical evidence could have been helpful to his defense to count one, but the evidence would not by itself tend to show that defendant was innocent of sex trafficking by means of force, fraud, or coercion. Even if defendant's speculation concerning the contents of M.W.'s phone were accurate, this does not mean that the exculpatory nature of the evidence would have been immediately apparent to Oxford. M.W. told Oxford that defendant actively took steps to distance himself activities such as posting advertisements and that he forced M.W. to contact past clients to generate business. Dkt. # 64, at 2. Oxford has testified that he found M.W. to be credible and that he believed defendant was forcing her to engage in prostitution, and finding evidence that M.W. placed advertisements or contacted clients would have been consistent with M.W.'s statements. The Court rejects defendant's argument that the exculpatory nature of evidence that might have existed on M.W.'s phone would have been apparent.

The Court also finds that defendant has an alternate source for much of the evidence that he claims was lost after the phone was returned to M.W. In a prior opinion and order (Dkt. # 64), the Court declined to suppress evidence seized from defendant's cell phone, and Oxford testified that defendant's phone contained text messages between defendant and M.W. Defendant argues that M.W.'s phone could have contained other relevant evidence, but the text messages appear to be the key evidence that will be used to establish that defendant coerced or intimidated M.W. into engaging

7

in commercial sex acts. Defendant argues that evidence of commercial sex trafficking on M.W.'s phone would have shown that she voluntarily engaged in prostitution but, if this were true, there should be an absence of evidence on defendant's phone concerning the placement of advertisements for prostitution. Defendant can rely on the absence of evidence on his phone if in fact he did not coerce M.W. to engage in commercial sex acts. The Court also notes that defendant will still be able to effectively cross-examine M.W. without knowing the full contents of her cell phone, and his filings to date suggest that he has a detailed knowledge of M.W.'s prostitution activities. Defendant's argument in support of dismissal of the indictment relies heavily on his speculation that certain evidence might have existed, but it appears that the evidence in his possession gives him a firm basis to make the same arguments that he claims would be supported by the alleged exculpatory evidence that would have been found on M.W.'s cell phone.

Finally, the Court finds no basis to conclude that Oxford acted in bad faith by returning M.W.'s phone without first obtaining a complete download of its contents. Oxford testified that he returned the phone to M.W. because he did not want to alienate a cooperating witness. Dkt. # 70, at 39. Oxford may have violated a TPD policy by returning M.W.'s phone and he may even have been negligent, but Oxford's testimony provides no basis for the Court to finds that Oxford returned the phone to M.W. with knowledge or intent that potentially relevant evidence would be destroyed. The Court also takes into account the speculative nature of the alleged exculpatory evidence that could have been on M.W.'s phone, and this supports Oxford's testimony that he did not act with the intent that relevant evidence would be lost. Defendant has not shown that Oxford acted in bad faith, and the Court finds that defendant's motion for dismissal of the indictment (Dkt. # 42) should be denied. The Court also rejects defendant's request for an adverse jury instruction concerning the

spoliation of evidence. However, if plaintiff relies on evidence from M.W.'s phone at trial, it may open the door to limited inquiry by defense counsel concerning any actions by M.W. to remove evidence from the phone before its contents could be downloaded.

**III.**

Plaintiff has filed notice that it intends to offer evidence that may fall under the scope of Fed. R. Evid. 404(b).[2] Plaintiff identifies two categories of evidence that it intends to offer at trial that may qualify as evidence of prior wrongs or bad acts under Rule 404(b):

- Text messages with two women, "JBae" and "Kammy", which show multiple prostitution references, orders, and threats. Both women have been identified by M.W. as being other prostitutes that were pimped by [defendant]. M.W. will also testify that the defendant assaulted other prostitutes in her presence, a common method of intimidation and control by pimps.

- Internet history data showing hundreds of visits to "Cityxguide.com", the website the defendant used to post prostitution ads of M.W. As well as additional internet history showing visits to other prostitution advertising websites, prostitution related web searches, and shopping for prostitution and pimping related products.

Dkt. # 68, at 1.

Rule 404(b) provides, in pertinent part:

Evidence of a crime, wrong or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character.

. . .

This evidence may be admissible for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident.

---

[2] The notice was filed shortly before trial and defendant may argue that he has not been given a sufficient opportunity to respond to the notice. The notice also provides a fairly limited description of the potential Rule 404(b) evidence, and the parties are advised that the Court's ruling on the admissibility of potential Rule 404(b) evidence is preliminary.

9

However, Rule 404(b) does not apply to "other act" evidence which is admitted as proof of the charged conduct; it applies only to evidence of acts extrinsic to the charged crime. United States v. Irving, 665 F.3d 1184, 1212 (10th Cir. 2011). The Tenth Circuit has held that "intrinsic evidence is that which is directly connected to the factual circumstances of the crime and provides contextual or background information to the jury." Irving, 665 F.3d at 1212. Moreover, "'[a]n uncharged act [is not] extrinsic if it was part of the scheme for which a defendant is being prosecuted . . . .'" United States v. DeLuna, 10 F.3d 1529, 1532 (10th Cir. 1993) (quoting United States v. Record, 873 F.2d 1363, 1372 n.5 (10th Cir. 1989)).

Even though evidence is intrinsic to the charged offenses, however, it still may be excluded under Fed. R. Evid. 403. United States v. Lambert, 995 F.2d 1106 (10th Cir. 1993) ("Such intrinsic 'other act' evidence, although not excluded by 404(b), is still subject to the requirement of Fed. R. Evid. 403 that its probative value is not substantially outweighed by the danger of unfair prejudice."). Under Rule 403, the Court "may exclude relevant evidence if its probative value is substantially outweighed by a danger of . . . [inter alia]: unfair prejudice, confusing the issues, misleading the jury, undue delay, [or] wasting time . . . ." Evidence is unfairly prejudicial only if it makes "a conviction more likely because it provokes an emotional response in the jury or otherwise tends to affect adversely the jury's attitude toward the defendant wholly apart from its judgment as to his guilt or innocence of the crime charged." United States v. Smith, 534 F.3d 1211, 1219 (10th Cir. 2008).

The Court has only a limited description of the potential Rule 404(b) evidence, but the Court preliminarily finds that both categories of evidence are intrinsic to the offense charged in count one and that the evidence is not likely to be unfairly prejudicial. Count one of the indictment alleges that defendant used "force, threats of force, fraud, and coercion . . . to cause M.W. to engage in

10

commercial sex acts." Dkt. # 2, at 1. It would be relevant to this offense if defendant threatened or assaulted other prostitutes in the presence of M.W., because this would be a means of coercing or intimidating M.W. to engage in commercial sex acts. There may be also be text messages between M.W. and the "JBae" and "Kammy" in which they discuss defendant's violent behavior, and this would be relevant to show that defendant used means of coercion and that the women were not voluntarily engaging in commercial sex acts. As to the "internet history data," this appears to be evidence that defendant frequently visited a website on which M.W. placed advertisements for prostitution and that he searched for information about prostitution and "pimping related products." This also appears to be direct evidence that defendant worked in the commercial sex business and, in conjunction with other evidence, could be used to show that he coerced M.W. into engaging in commercial sex acts. Even if the Court were to find that the evidence is not intrinsic to count one, plaintiff argues that the text messages are admissible to show a common scheme or plan or absence of mistake, because the text message rebut defendant's argument that M.W. engaged in sex trafficking of her own free will and not as the result of any coercive behavior. Dkt. # 68, at 5. Plaintiff argues that evidence of defendant's internet history shows goes to his intent, knowledge, or plan to engage in the sex trafficking business. Id. The Court preliminarily makes an alternate finding that both categories of evidence would be offered for a proper purpose under Rule 404(b).

**IT IS THEREFORE ORDERED** that the report and recommendation (Dkt. # 59) is **accepted** and Defendant's Motion to Dismiss for Spoliation of Evidence, or in the Alternative, Other Appropriate Relief (Dkt. # 42) is **denied**.

**IT IS FURTHER ORDERED** that the evidence identified in plaintiff's Notice of Intent to Admit Evidence of Other Crimes, Wrongs or Acts (Dkt. # 68) is preliminarily admissible.

**DATED** this 18th day of November, 2019.

_____
CLAIRE V. EAGAN
UNITED STATES DISTRICT JUDGE